UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00256-KDB

| | |
|---|---|
| QUENTIN FREEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| FNU FRANKLIN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss [Doc. 17].

## I. BACKGROUND

Pro se Plaintiff Quentin Freeman ("Plaintiff") is a prisoner of the State of North Carolina.[1] On August 7, 2025, Plaintiff filed this action by unverified Complaint pursuant to 42 U.S.C. § 1983 naming FNU Graggy, identified as a Foothills Security Risk Group (SRG) Officer, and FNU Franklin, a Foothills SRG Sergeant as Defendants. [Doc. 1]. Plaintiff's retaliation claim against Defendant Franklin survived initial review and Defendant Graggy was dismissed in accordance with the Court's Order. [Doc. 6]. In pertinent part, Plaintiff alleged that Defendant Franklin retaliated against Plaintiff for filing grievances and the Price Action through Franklin's involvement in four disciplinary charges brought against Plaintiff on June 15, 2025. [Doc. 1 at 5].

---

[1] The docket in this matter reflects that Plaintiff is currently housed at Foothills Correctional Institution ("Foothills") in Morganton, North Carolina. In another action filed by the Plaintiff, Freeman v. Price, Case No. 1:25-cv-00169-KDB ("Price Action"), Plaintiff notified the Court that he had been transferred to Alexander Correctional Institution. [Id., Doc. 23]. Plaintiff has not so notified the Court in the instant action. [See Standing Order, ¶ 3 ("It is the Plaintiff's responsibility to keep the Court advised of his/her current address at all times…. If the Plaintiff's address changes and no Notice is promptly filed with the Clerk of Court, the case may be dismissed for lack of prosecution.")]. Plaintiff's Complaint in the Price Action was dated June 3, 2025, and received by the Court on June 9, 2025. [Id., Doc. 1 at 1, 12].

In the section of the Complaint regarding exhaustion of administrative remedies, Plaintiff alleged that he filed a grievance on July 17, 2025, but that "[he didn't] think it got turned in." [Doc. 1 at 7; see id. at 5]. Plaintiff further alleged that he "rewrote 2 more [grievances] still no answer." [Id.]. Plaintiff signed his Complaint on July 27, 2025. [Id. at 11].

Now pending is Defendant Franklin's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 17]. Defendant argues that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action. [Doc. 18]. In support of his motion, Defendant submitted a brief; Declarations of Counsel and of Executive Director of the Inmate Grievance Resolution Board (IGRB) Adrina G. Bass; copies of Plaintiff's fully exhausted and unexhausted grievances during the relevant time; Plaintiff's Correspondence Tracking System record; and records from other cases filed by Plaintiff in this Court in which he failed to exhaust administrative remedies before filing suit. [Docs. 18, 18-1 to 18-11].

On December 29, 2025, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant's motion and warning him that his failure to timely to do so "will likely lead to the granting of relief that Defendant seeks." [Doc. 19 at 1]. Plaintiff, however, has not responded to Defendant's motion.

This matter is now ripe for adjudication.

## II. DISCUSSION

### A. Abandonment

Because Plaintiff has failed to respond to Defendant's motion to dismiss, particularly given the Court's warning that failing to respond would likely result in dismissal, Plaintiff is presumed

to have abandoned his claim against the Defendant. See Evans v. City of Lynchburg, 766 F.Supp.3d 614, 618-19 (W.D. Va. Feb. 5, 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes waiver of the corresponding claims.") (collecting cases); Sasser v. Safe Home Sec., Inc., No. 1:18CV746, 2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (failing to respond to argument constitutes abandonment of a claim) (collecting cases); Taccino v. Ford Motor Co., No. CV GLR-18-913, 2019 WL 1429263, at *9 (D. Md. Mar. 29, 2019) ("when a party fails to respond to an argument made in a motion to dismiss, they abandon that claim").

The Court, therefore, will grant Defendant's motion and dismiss this action with prejudice because Plaintiff has abandoned his one remaining claim.[2] Even if Plaintiff had not abandoned his claim, the Court would grant Defendant's motion in any event, though without prejudice, for Plaintiff's failure to exhaust his administrative remedies before filing this action.

**B.     Exhaustion**

The PLRA requires a prisoner to exhaust administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The

---

[2] In dismissing Plaintiff's claim on abandonment grounds, the Court notes that Plaintiff also abandoned his remaining claim in his case against Defendant Price where Plaintiff had properly notified the Court of his new address and received the Court's Roseboro Order. [See Price Action, Doc. 23, 11/25/2025 (Court Only) Docket Entry].

PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action. Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). An inmate, however, is not required to affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216). "[D]espite the fact that failure-to-exhaust is an affirmative defense, a prisoner's complaint may be dismissed for non-exhaustion 'in the rare case where failure to exhaust is apparent from the fact of the complaint.'" Id. (quoting Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 682 (4th Cir. 2005)).

A prisoner, however, need only exhaust those remedies actually available. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance).

The NCDAC has established the ARP, a three-step procedure governing submission and

4

review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety); [Doc. 21-1 at ¶ 6: Bass Dec.]. Inmates are required to exhaust administrative remedies with the NCDAC in accordance with the ARP. See id. An inmate does not exhaust administrative remedies with the NCDAC until all three steps are completed. See id.

Plaintiff alleged that Defendant Franklin retaliated against Plaintiff for filing grievances and the Price Action through Franklin's involvement in four disciplinary charges brought against Plaintiff on June 15, 2025. Plaintiff further alleged that he had submitted a grievance on July 17, 2025, but that he did not believe it was "turned in" and that he subsequently wrote two more grievances but still got "no answer." [Doc. 1 at 7]. Plaintiff, however, has not submitted copies of any of these grievances.

In support of his motion to dismiss, Defendant Franklin provides copies of Plaintiff's two fully exhausted grievances between January 2025 and November 7, 2025, as provided by IGRB Executive Director Bass, as well as Plaintiff's initiated grievances during this time frame and his Correspondence Tracking System record, which documents Plaintiff's written complaints and grievances submitted between June 2024 and November 10, 2025. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Doc. 21-1 at ¶¶ 10-12: Bass Dec. (attesting that the substance and fact of the Declaration, which includes the grievance records, is true and correct), Doc. 21-3: Hoyd Dec. (same).

These records show that Plaintiff wrote a grievance dated July 17, 2025, complaining about Defendant Franklin's alleged retaliation that is the subject of the Complaint here. [Doc. 18-2 at

5

2]. This grievance is marked received on August 1, 2025. [Id.]. The Step One response to Plaintiff's grievance was issued on August 19, 2025, and the grievance was forwarded to Step Two. [Id. at 4]. The September 8, 2025 Step Two response noted a finding that the disciplinary infractions Plaintiff received were "to maintain safety and security of the facility not for retaliation." [Id. at 5]. Plaintiff appealed to Step Three the same day. [Id.]. On October 8, 2025, the Step Three response issued, affirming a finding that no violation of prison policy or other misconduct occurred. [Id. at 1]. Plaintiff's other fully exhausted grievance during the relevant time did not relate to the matter at issue here. [See Doc. 18-3 at 1-4].

Oddly, these records also show that Plaintiff submitted a grievance dated September 5, 2025, concerning the allegations of the Complaint and, on October 7, 2025, signed the Step Two response acknowledging his agreement thereto. [Doc. 18-9 at 1-4]. Finally, the records show that Plaintiff submitted at least two other unexhausted grievances during the relevant time. [Doc. 18-7, Doc. 18-8].

Defendant has plainly demonstrated that Plaintiff did not exhaust a grievance regarding the subject incident before he filed the Complaint in this matter. Rather, Plaintiff wrote a grievance concerning the matter at issue dated July 17, 2025, which was received by prison staff on August 1, 2025, and processed. The records show that this grievance was exhausted on October 8, 2025, two months after Plaintiff filed his Complaint in this matter. Moreover, the records submitted by Defendant show that Plaintiff had ready access to the grievance procedure, was able to submit and exhaust grievances while at Foothills, and, contrary to Plaintiff's allegations, two grievances Plaintiff submitted concerning the alleged incident were processed.

Without a contrary showing by Plaintiff, the Court concludes from the materials before it that Plaintiff did not fully exhaust his administrative remedies before filing the instant action. As

6

such, even if Plaintiff had not abandoned his claim, the Court would dismiss this action without prejudice for Plaintiff's failure to exhaust. See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011).

## III. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendant's motion to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [Doc. 17] is **GRANTED** and this action is hereby **DISMISSED with prejudice** in accordance with the terms of this Order.

**IT IS SO ORDERED**.

Signed: January 30, 2026

Kenneth D. Bell
United States District Judge